IN THE

# SUPREME COURT

OF

# NEW JERSEY,

## MAY TERM, 1792.

---

[131]    DEN, ON THE DEMISE OF ELY, v. JONES.

A sale, made by the heir, of real property, pending a suit against the administrator, on which judgment was afterwards obtained against administrator, cannot prevail to the prejudice of such judgment; but if execution is taken out, this property may be levied upon and sold by the sheriff, and a good title pass by the sheriff's deed.

NOTE.—On a bill in equity to set up a bond against executors or administrators, the heir must be made a party.

---

This was a second trial at bar, upon a second ejectment.

The case, so far as it is material to state the circumstances, was as follows:  The premises in question were vested in fee in one William Hutchinson, who, in the year 1763, became obligated to the king as a security in a bond given by one Brooks, conditioned for his faithful performance of the office of sheriff.  Brooks, in the lifetime of Hutchinson, committed a breach of. this obligation, by which the bond became forfeited.  A suit was afterwards instituted on this obligation against the administrator of Hutchinson, in May, 1771, on which a judgment was had in April, 1774, and

153

execution sued out, under which the premises in dispute were levied upon and sold by the sheriff on the 31st July, 1776, to Daniel Jones, the present defendant.

William Hutchinson continued in possession, and died seized of the lands in question in July, 1770. Robert Hutchinson, his heir-at-law, entered on the premises after the death of his ancestor, and in the month of June, 1772, conveyed them to John Ely, for the sum of £875. John Ely kept undisturbed possession, and died seized, in November, 1776, leaving issue, John Ely, his eldest son and heir-at-law, and lessor of the plaintiff. Daniel Jones came into actual possession under the sheriff's deed, in March, 1790.

The lessor of the plaintiff claimed the land in controversy, under the deed from Robert Hutchinson to his father, John Ely, in June, 1772; and contended that, as at the death of William Hutchinson, the original obligor in the bond, there was neither suit nor judgment in existence to bind the land, it descended to Robert, free from all encumbrances or liens, and that his right to convey the premises in fee was perfect and indefeasible.

The defendant made title under the suit against the administrator of William Hutchinson on this bond, commenced in May, 1771, which, it was maintained, operated as a lien upon the land from that period; the judgment in this suit in [132] 1774, the execution, and the conveyance to him of the premises which had been seized and sold as assets or property left by William Hutchinson, subject to the payment of all legal claims against him at the period of his death.

*Stockton* and *Frelinghuysen*, for the defendant, moved, on this exhibition of the case, that the plaintiff might be nonsuited.

*Leake* and *Ab. Ogden, contra.*

KINSEY, C. J., delivered the opinion of the court.

Den, ex dem. Ely, v. Jones.

At the former trial of this cause, it was perceived that it involved several matters which deserved serious and mature consideration before the principles of law arising from them were settled and adopted by this court as rules of property. For this reason it was agreed by the parties, in order that they might have the benefit of a verdict of a jury upon the point of fraud, and the deliberate opinion of the court on the questions of law, to call upon the jury to determine whether the deed from Robert Hutchinson to John Ely was fraudulent or not; and if they should be of opinion that this deed was *bona fide,* then all the other facts were to be stated specially for the opinion of the court. We should have been glad had this course been adopted on the present occasion, but as it has not, the court are under the necessity of giving their opinion in this collateral way, in a more hasty manner, and with less time for consideration than they would have wished.

The present motion for a non-suit has been made upon three grounds:

1st. It is contended that the title of the defendant is paramount to that set up by the plaintiff, because William Hutchinson, who was in his lifetime seized of the lands in controversy, had, before his decease, to wit, in April, 1763, entered into a bond to the king as security for Brooks that he would faithfully discharge the duties of his office of sheriff; which bond became forfeited in the lifetime of Hutchinson. It is contended that this bond was in the nature of a recognizance, and operated so as to bind the land from the date, or at least [133] from the time that it became forfeited by a breach of the condition, and that no subsequent conveyance by William Hutchinson, or his heir, could discharge the land of this encumbrance.

2d. That John Ely purchased the lands in controversy with notice of this encumbrance, and that, therefore, he, and those claiming under him, stand precisely in the same predicament with the original obligee, or his immediate heir.

3d. That the purchase by Ely from Robert Hutchinson was

---

Den, ex dem. Ely, v. Jones.

---

made not only with a notice of this existing encumbrance, but, in fact, during the pendency of an action brought on this bond to the king, for the breach of the condition, and its object being to deprive the king of the benefit of the obligation, by removing or disposing of the property which was to answer the debt, the conveyance was legally void.

The court do not deem it necessary, or even expedient, to give an opinion upon the two first grounds upon which this motion has been made, as they unanimously concur in the opinion that the third reason is sufficient to warrant them in nonsuiting the plaintiff.

It has long been settled in this state, that lands are assets in the hands of an executor or administrator for the payment of debts, and that, upon an action brought against either, the real estates of the testator or intestate are chattels—may be taken in execution and sold for the payment of debts, and this without making the heir a party to the suit. (a)   This is now grown into custom ; it has become a fixed rule of property, and to introduce a different doctrine at this time would be to unsettle, and to overturn, a settled principle of law, and to unfix many titles which rest upon this foundation.   As soon, therefore, as an action is commenced against an executor or administrator, which can affect the lands of the deceased, we consider it as notice to the whole world, and whoever purchases land of the heir under such circumstances, must do it at his peril. · It never can be permitted to an heir, after a [134] legal claim has thus been legally preferred, to oust the creditor of his means of obtaining satisfaction for his debt, by taking the assets out of the hands of the administrator or executor ; the property must still be liable for these demands, and may be taken and sold to satisfy them in whosoever hands they may be found.   A contrary opinion would open the door

(a) In the case of *Woodruff* v. *Crane's Executors*, in chancery, it was resolved, by Patterson, Chancellor, Chetwood and Kirkpatrick, masters, concurring, that on a bill to set up a bond, the heir must be made co-defendant with the executors or administrators.—MSS.

Den, ex dem. Ely, v. Jones.

to the most serious inconveniences, and would be productive of the grossest frauds. If this court should establish it as a rule, that an heir-at-law, after an action has been instituted against the executor or administrator, has it in his power to dispose of the real estate, and go off with the proceeds, (as is in reality the state of the present case,) it would tend to defeat the principle which the legislature evidently had in view, and endeavored to establish, when they made lands chattels for the payment of debts—we mean the principle, that all the real estate whatsoever, of every individual, should be held liable to satisfy his just debts—and give encouragement to practices too flagrantly vicious, too injurious to society, ever to be countenanced by this court.

When a man contracts a debt, all his estate is liable for the payment of it, and an heir who derives his right exclusively from his ancestor, takes the estate subject to this liability, if the claim be prosecuted within a reasonable time. It is incumbent upon every purchaser, and it is not less within his power than consistent with his duty, to make an inquiry into the title which he intends to buy, and if he is so far neglectful of his own interests as to omit to make it, it is far more reasonable that he should suffer from a deception against which it was so easy to guard himself, than that an honest creditor should be deprived of his just debt. It is the duty of courts of justice to make every construction in favor of such creditors, and to prevent attempts which may be attended with such pernicious consequences.

These remarks are of general application, and have governed the court in forming their opinion, but the case before us is a plain one. A man buys an estate of an heir-at-law, pending an action against the administrator, with legal, and, we think from the evidence we have heard, we may say, with actual notice of the debt or demand upon the estate. We [135] are therefore clearly of opinion that on a purchase from the heir-at-law, thus made, no ejectment can be supported against a purchaser at a sheriff's sale, under a judgment against the administrator, but the lands, notwithstanding such pur-

chase from the heir-at-law, remained liable, and were rightly taken in execution and sold. (a)

Let the plaintiff be non-suited.

NOTE.—In the case before the court, the administrator against whom the judgment was obtained, was also the heir-at-law who made the sale to Ely ; but the court observed that though this might make the case stronger, it was not what constituted the foundation of their decision—their opinion went on the general grounds.

(a) In the case of *Graff* v. *Smith's Administrators*, 1 *Dall.* 481, some remarks are made by Shippen, president. which are applicable to the present case. " The real estate is confessedly a fund for the payment of debts. It is a fund, however, that does not actually go into the hands of the executor or administrator, as assets in the ordinary course; but it is a fund made such by positive law, in another form; that is, creditors may issue executions and sell it for the payment of their debts, on a judgment against the executor or administrator; for it is not necessary, nor has it been usual to bring the action against the heir. The lands, however, go into the hands of the heir or devisee, between whom and the creditors there is no privity. They are made a fund for the payment of all debts, and must necessarily have been intended·by the legislature to be a certain and not a precarious fund; for since it is declared that the creditor may take them in execution on a judgment against the executor or administrator, it is intended they should have the fruit of the execution; and this can not otherwise be, than by considering them as specifically liable in whose hands soever they may be." See also *Morris' Lessee* v. *Smith*, 4 *Dall.* 119.

CITED *in Den* v. *Jaques*, 5 *Hal.* 269 ; *Den* v. *Hunt*, 6 *Hal.* 7.